IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINESSOTA

| | | |
|---|---|---|
| JAMES PAUL ARMSTRONG REED, | * | |
| | * | |
| Plaintiff, | * | 0:19-cv-02708 RWP |
| | * | |
| v. | * | |
| | * | |
| ANDREW SAUL, | * | |
| Commissioner of Social Security, | * | |
| | * | MEMORANDUM OPINION |
| Defendant. | * | AND ORDER |
| | * | |

Plaintiff, James Paul Armstrong Reed, filed a Complaint in this Court on October 14, 2019, seeking review of the Commissioner's decision to deny his claim for Social Security benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. and 1381 *et seq*. This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on June 6 and 8, 2016, respectively. Tr. at 199-205. Plaintiff appeared at an administrative hearing on February 13, 2019, before Administrative Law Judge Catherine Ma (ALJ). Tr. at 54-90. The ALJ issued a Notice of Decision – Unfavorable on March 21, 2019. Tr. at 10-23. On September 24, 2019, the Appeals Council declined to review the ALJ's decision[1]. Tr. at 1-3. Thereafter, Plaintiff commenced this action. Both parties filed Motions for Summary Judgment and memorandum in support thereof. ECF Nos. 15, 16[2], 17, 18.

---

[1] The Appeals Council declined to review the ALJ's decision on August 11, 2019 (Tr. 4-9) but after new evidence was received, the Appeals Council reopened the case, but found no reason to change the decision.

[2] This document is captioned in the name of an individual who is not the Plaintiff in this case, and with an incorrect case number. Likewise, Plaintiff filed a reply brief [20] which is captioned with an incorrect case number. The Court will assume that these clerical errors were inadvertent and ultimately of no consequence. Nevertheless, Plaintiff should take care in the future to avoid such carelessness.

## ALJ's DECISION

At the outset of the decision, the ALJ noted that Plaintiff is insured for benefits until December 31, 2019. At the first step of the sequential evaluation, 20 C.F.R. § 404.1520(a)(4) & 416.920(a)(4), the ALJ found that Plaintiff has not engaged in substantial gainful activity after May 6, 2015, the alleged disability onset date. Tr. at 15.

At the second step, the ALJ found Plaintiff has the following severe impairments: neurocognitive disorder, alcohol addiction disorder, post-traumatic stress disorder (PTSD), borderline personality disorder and anxiety disorder. Tr. at 15. In addition to severe impairments, the ALJ found that Plaintiff has medically determinable impairments which are not severe – sleep-related breathing disorder and hypogonadism. The ALJ found that Plaintiff's impairments were not severe enough to qualify for benefits at the third step of the sequential evaluation. Tr. at 16. At the fourth step, the ALJ found:

> After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he cannot work at a production rate pace and is limited to routine workplace changes.

Tr. at 18. The ALJ found that Plaintiff is unable to perform any of his past relevant work. Tr. at 21. Based on the testimony of a vocational expert, the ALJ found that there are a significant number of jobs in the national economy which Plaintiff can perform, examples of which are laundry worker, kitchen helper, and store laborer. Tr. at 21-22. The ALJ found that Plaintiff is not disabled nor entitled to the benefits for which she applied. Tr. at 22-23.

## DISCUSSION

> We will affirm the ALJ's decision "[i]f the ALJ's findings are supported by substantial evidence on the record as a whole," an inquiry that requires us to consider evidence in the record that detracts from the ALJ's decision. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the decision." *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th

Cir. 2004).

> We will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2007) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id*. (quoting *Nicola*, 480 F.3d at 886). Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).

*Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) (alterations in original).

In *Brand v. Sec'y of Dep't of Health, Educ. and Welfare*, 623 F.2d 523, 527 (8th Cir. 1980), Chief Judge Lay wrote that *Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951), is "the guideline for the evaluation of the standard of review." In *Universal Camera*, the Court wrote:

> We conclude, therefore, that the Administrative Procedure Act and the Taft-Hartley Act direct that courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals. The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both.

340 U.S. at 490. In *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) the Court wrote: "On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence'. The Court continued:

> And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means – and means only – "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

3

139 S. Ct. at 1153 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). In reviewing disability decisions from the Social Security Administration, this Court sits in an appellate capacity and is responsible for giving the agency decision a scrutinizing analysis. This requires the Court to determine the substantiality of the evidence by determining if the ultimate decision is supported by substantial evidence on the record as a whole. *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). In *Gavin*, the Court wrote:

> In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory. It follows that the only way a reviewing court can determine if the entire record was taken into consideration is for the district court to evaluate in detail the evidence it used in making its decision and how any contradictory evidence balances out.
>
> *Id*. (citations omitted).

In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel*, 143 F.3d 1134, 1136-37 (8th Cir. 1998) (citing *Brinker v. Weinberger*, 522 F.2d 13, 16 (8th Cir. 1975)).

The most important issue in any disability case that proceeds beyond step three of the sequential evaluation is that of residual functional capacity:

> Probably the most important issue will be the question of [residual functional capacity] . . . The RFC that must be found . . . is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.

*McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc).

For reversal Plaintiff argues: (1) The ALJ erred in assessing weight to the opinion of Dr. Martin Sievert; and, (2) the ALJ erred in giving weight to the opinion of the state agency

consultant but failing to either incorporate all limitations in the opinion or explaining the reason for their exclusion.  ECF #16 p. 2.

**ISSUE I:  DID THE ALJ ERR IN THE ASSESSMENT OF DR. SIEVERT'S OPINION?**

Plaintiff argues that the ALJ erroneously weighed the opinion of Martin Sievert, M.D., which was rendered in a letter dated January 23, 2019.  Dr. Sievert wrote:

> I have been treating Mr. Reed at Gundersen since December 2016.  He is being treated for borderline personality disorder, PTSD, and alcohol use disorder in remission.  He has been very committed to treatment and attends appointments regularly with myself as well as his therapist, Mark Taylor.  He is making good progress but does have some fluctuation in how he is doing which is expected for this point in treatment.  At this time, Mr. Reed is unable to have full time employment due to his mental illness.  He still has trouble with executive functioning, sleep problems, and anxiety.  His alcohol use is in remission and he has not self-harmed since July 2018.  I am very optimistic on his prognosis due to the work he is doing in treatment.

Tr. at 1202.  Dr. Sievert also completed a "check-the-box" form on which he indicated that Plaintiff's is: unable to understand, remember, and carry out simple instructions; is unable to maintain attention for a minimum of two hours; is likely to need unscheduled breaks; will be absent two or more days per month; and can work 2 hours per day and 10 hours per week.   In pertinent part[3], the ALJ wrote:

> I assign little weight to the opinion of Martin Sievert, M.D. … Dr. Sievert opined that the claimant is unable to have full-time employment and could work two hours per day and ten hours per week (13F, 15F, 16F). … It is unclear if Dr. Sievert [is] familiar with the Social Security Administration's disability evaluation program.  The doctor['s] statement[] indicating the claimant is "unable to work" relate to issues reserved to the Commissioner, and as such are not entitled to any special significant weight … The doctors used a checklist-style form to render their opinions.  These checklist-style forms merit little weight, as they include only conclusions regarding functional limitations without any rationale for those conclusions.  Additionally, these opinions are given little weight, as they are vague, ambiguous and do not provide specific limitations or a function-by-function analysis of the claimant's limitations.

---

[3] Here, the ALJ also discusses the weight given to opinions rendered by John Cochran, M.D. and Lucas Hammell, D.O., but the Court will confine itself to the ALJ's consideration of Dr. Sievert's opinion since that is alleged to be error.

5

Tr. at 20. Exhibits 13F and 15F are copies of Dr. Sievert's letter of January 23, 2019. 16F is the check-the-box form.

As noted above, Plaintiff's applications were filed in June 2016, so the applicable regulations are found at 20 C.F.R. §§ 404.1527 and 416.927. The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairments(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). The regulation states:

> If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors listed in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

*Id*. at (c)(2). Subsection (i) states that the longer a source has treated a patient, the more weight will be given to the medical opinion. Subsection (ii) states that the more knowledge about the claimant's impairments, the more weight will be given. The other subsections referenced above deal with supportability (i.e. medical signs and laboratory findings); consistency; specialization (more weight is given to specialists in the area of specialization); and other factors such as the amount of understanding of the evidentiary requirements of the disability program. The regulations provide that no weight will be assigned to opinions on issues reserved to the Commissioner: "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. at (d)(1). Likewise, an opinion that a claimant meets or equals a listed impairment is reserved to the

6

Commissioner. *Id*. at (d)(2).

In *Walker v. Commissioner, Social Sec. Admin.*¸911 F.3d 550, 553 (8th Cir. 2018), the Court wrote that the above cited regulations require an ALJ to explain with some specificity why a treating physician's opinion is rejected and failure to do so is reversible error.

In *Papesh v. Colvin*, 786 F.3d 1226, 1132 (8th Cir. 2015), the Court, citing 20 C.F.R. § 404.1527(c)(2) and *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007), wrote that controlling weight must be given to a treating physician's opinion if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence.  The ALJ in *Papesh*, had declined to give controlling weight to a treating physician's opinion because the ALJ said the physician's opinion was inconsistent with his own treatment notes and appeared to be based on the claimant's subjective assertions. The Court found that those reasons were "potential bases to not give *controlling* weight" to the opinion.  (*emphasis* in the original).  The Court went on to note that the ALJ offered no basis for failing to give the opinion "non-substantial weight."  "For example, the ALJ did not find the opinion inconsistent with the record …" *Id*.

The Commissioner cites *Hacker v. Barnhart*, 259 F.3d 934, 937 (8th Cir. 2006) and *Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997) for the proposition that a treating physician's opinion is not automatically given controlling weight because the ALJ must evaluate the record as a whole.  In *Hacker*, a therapist and a physician submitted opinions that Hacker was incapable of sustained employment. *Id*. at 935.  The ALJ dismissed the opinions because they were inconsistent with substantial evidence in the record and because the opinions contradicted the treatment notes in important respects. *Id*. at 935-36.  Hacker argued that the opinions were impermissibly discounted and that the ALJ was required to contact the physicians. *Id*. at 936-37.  Hacker also argued that the ALJ should not have relied on the

7

testimony of non-treating physicians.  *Id*. at 937.  The Court held that the ALJ's decision was within the "available zone of choice" because substantial evidence on the record as a whole supported the finding that the opinions conflicted with Hacker's daily activities, and that the doctor's opinion that Hacker was unable to tolerate even minor physical exertion was inconsistent with advice to exercise more frequently.  *Id*. at 938.

In *Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997), it was argued that the ALJ erred by failing to give controlling weight to one of the treating physicians.  The Court held that the ALJ was correct to give controlling weight to specialists who had treated Rogers during the relevant time period.

In the case at bar, Dr. Seivert is a treating physician.  Since December 2016, the doctor treated Plaintiff for borderline personality disorder, PTSD, and alcohol use disorder in remission.  "… the longer a source has treated a patient, the more weight will be given to the medical opinion."  20 C.F.R. § 404.1527(c)(2).    The doctor expressed optimism about Plaintiff's prognosis, but opined that he is unable to (1) understand, remember, and carry out simple instructions; (2) maintain attention for a minimum of two hours; (3) that he will need unscheduled breaks; (4) is likely to be absent two or more days per month; (5) is able to work 2 hours per day, 10 hours per week.  Controlling weight will be given to a treating source's medical opinion "on the nature and severity of your impairment(s) [if the opinion] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case." *Id*.  That section of the regulation concludes by stating that good reasons will always be given for the weight assigned to the treating source medical opinion.

In assigning little weight to this opinion, the ALJ addressed the doctor's opinion that Plaintiff is unable to work full time.  This is not a good reason to discount the doctor's opinion.

8

In *Smallwood v.Chater*, 65 F3d 87, 89 (8th Cir. 1995), the ALJ had discounted a doctor's opinion that Smallwood could work only a limited number of hours because such an opinion was vocational rather than medical. The Court disagreed, writing that the regulations provide that medical reports should include a statement about what the claimant can still do despite the impairment(s). The regulation cited by the Court in *Smallwood* was 20 C.F.R. § 404.1513(b), but the language quoted is similar if not identical to the regulation in force today. "Medical opinions are statements from acceptable medical sources that reflect judgments about … what you can still do despite impairment(s)." 20 C.F.R. § 404.1527(a)(1). Nevertheless, the Court in *Smallwood* held that the doctor's residual functional capacity questionnaire was inconsistent with his conclusion, and that inconsistency was explained nowhere in the record.

In rejecting Dr. Sievert's opinion, the ALJ wrote that it is unclear if the doctor was familiar with the Social Security Administration's disability evaluation program. Be that as it may, the doctor is very familiar with his patient's impairments and limitations. Likewise, while the doctor opined that Plaintiff is presently unable to perform employment, his opinion is accompanied by specific limitations noted above.

Next, the ALJ wrote that the opinion of doctor Sievert was discounted because it was produced in a checklist-style without any rationale for the conclusions. In *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014), the Court wrote: "While a checklist evaluation can be as source of objective medical evidence, we have upheld the decision to discount a treating physician's statement where the limitations listed on the form stand alone, and were never mentioned in the physician's numerous records of treatment nor supported by any objective testing or reasoning." In the case at bar, the record is replete with Dr. Sievert's treatment notes. *See* Tr. at 911 *et seq*. On December 5, 2016, Dr. Sievert saw Plaintiff for an intake assessment at Gundersen Lutheran Medical Center in La Crosse, Wisconsin. Thereafter,

9

Plaintiff saw Dr. Sievert and other health care providers on a regular basis at that facility.

In *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020), the Court held that under the regulations, an ALJ must give controlling weight to a treating physician's opinion if it is well supported by medical evidence and not inconsistent with the substantial evidence in the record. The Court wrote:

> If the ALJ decides that the opinion does not deserve controlling weight, the ALJ must provide "good reasons" for the decision and must consider: the length of the treatment relationship, record support for the opinion, the opinion's consistency, the extent to which the opinion is connected with the physician's specialization and other relevant factors. 20 C.F.R. § 404.1527(c)(2)-(6). SSA guidance provided that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers … the reasons [for the decision]." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)

In the opinion of the Court the ALJ's analysis of Dr. Sievert's opinion falls short of what is required by the regulations and case law necessitating a remand. On remand, if the ALJ decides not to give controlling weight to the decision should explain "with some specificity" why it was rejected or discounted. If the ALJ finds that the doctor's opinion about the nature and severity of Plaintiff's impairments is not supported by medically acceptable diagnostic techniques, or if the opinion is inconsistent with other substantial evidence in the record, the ALJ should explain that finding with the specificity required by the regulations and case law. In other words, the ALJ must give good reasons for the finding. Likewise, if the ALJ does not give controlling weight to the doctor's opinion, the ALJ should be clear about the weight assigned to the opinion and what evidence is being relied upon for that finding.

**ISSUE II: ASSESSMENT OF THE STATE AGENCY MEDICAL CONSULTANTS' OPINIONS.**

Plaintiff argues that the ALJ erred in giving "little weight" to the opinion of State agency consultants but failed to either incorporate all the limitations in the opinion or explain the

10

reason for their exclusion. ECF 16 at 23. Specifically, Plaintiff notes that the consultants found a moderate limitation in Plaintiff's concentration, persistence and pace. The ALJ, however, did not include that limitation in the finding of residual functional capacity, nor did the ALJ explain why it was not included. Plaintiff argues that the ALJ's failure to address this moderate limitation is inconsistent with the weight he afforded the opinions. ECF 16 at 24. In support of his argument Plaintiff cites various sections of the Program Operations Manual System (POMS) and cases which discuss whether the POMS are binding on Social Security adjudicators. ECF 16 at 25-27. Plaintiff concludes by arguing that a remand is required for a reevaluation of the weight afforded to the state agency psychologists and their specific findings involving concentration, persistence or pace. ECF 16 at 29.

In his brief, the Commissioner expressed uncertainty as to what, exactly, Plaintiff is arguing (ECF 18 at 12), and frankly, the Court shares the Commissioner's confusion. However, as will be shown, both state agency psychological consultants, determined that while Plaintiff did, indeed, have some moderate limitations, as Plaintiff argues, both psychologists opined that Plaintiff retains the ability to concentrate and attend to limited detailed tasks with moderate limited in complex and technical tasks.

The Commissioner argues that while the ALJ is required to consider the State agency consultants' opinions, the ALJ is not required to adopt those conclusions. ECF 18 at 12. The Commissioner argues that it must be remembered that Plaintiff appealed from the State Agency determinations to the administrative law judge because he disagreed with the conclusions reached by those doctors. ECF 18 at 13. The Commissioner writes: "But again Plaintiff's argument appears premised on an assumption that the ALJ agreed with the medical consultants' opinion, rather than gave them little weight. Because the ALJ gave the opinions little weight, the opinions were not relied upon as substantial evidence supporting the ALJ's

11

finding that Plaintiff was not disabled." ECF 18 at 13.

On July 19, 2016, Janis L. Konke, M.S., L.P evaluated Plaintiff's claim for the State Agency at the initial stage of development. Tr. at 96-100. Ms. Konke wrote:

> This is a 55 year old male alleging PTSD, Major Depression and Alcohol abuse. He reports history of abuse and alcohol problems since age 12. He relapsed to drinking 3/2016 after nearly a year of sobriety. He had one psychiatric hospitalization in 1987 and reported self injurious behavior in 2015. As of 5/2016 he reports 30 days sobriety. He is casually and appropriately dressed with normal gait, normal speech, normal thinking and intact associations. He is oriented X3 with anxious affect and mood. He has been prescribed Buproprion, Citalopram and Zoloft. He reports 4+ years of college and has worked from 1992-2015 as a severe weather photojournalist photographing hurricanes, tornados, etc. He lives in a house with his fiancée. He reports difficulty attending, decreased memory, flashbacks, dizziness, difficulty reading. He has breakfast with is fiancée and can make simple meals. He attends AA and therapy. He sweeps and waters the garden, takes out the trash, drives. His fiancée pays the bills and shops. File evidence suggests a severe mental impairment that would not meet or equal listing level. See RFC.

Tr. at 97. When looking at the 'B' criteria of the listings, Ms. Konke noted mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. Tr. at 96. On mental residual functional capacity, Ms. Konke evaluated the various domains. As noted above, Plaintiff is concerned about the moderate limitation in the domain of concentration, persistence and pace. Ms. Konke's evaluation shows that she determined that Plaintiff has sustained concentration and persistence limitations. Tr. at 98. After rating various subdomains as either moderately limited or not significantly limited, Ms. Konke was asked to explain in narrative form these limitations. In response, she wrote: "He retains the ability to concentrate and attend to limited detailed tasks. He would have moderate limitation for complex and technical tasks." Tr. at 99.

On Reconsideration, Audrey Frederickson, Psy.D. rated the 'B' criteria for listing 12.09 – substance addiction disorders, as: Moderate restriction of activities of daily living; moderate

12

difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and, no episodes of decompensation. Tr. at 128. Like Ms. Konke, Dr. Frederickson found Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically base symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods to be moderately limited. Tr. at  Dr. Frederickson, after completing a mental residual functional capacity form, agreed with Ms. Konke that Plaintiff "… retains the ability to concentrate and attend to limited detailed tasks. He would have moderate limitation for complex and technical tasks." Tr. at 130.

Plaintiff argues that the aforementioned limitations in the attendance and completing a normal workday when combined with the other impairments would have had an impact on the occupational base. ECF 16, page 33.

At the hearing, in response to the ALJ's hypothetical question, the vocational expert identified three unskilled medium jobs which she opined were possible. Tr. at 85. On cross examination the expert testified that a person who is off task more than ten percent of a day would not be employable. Being absent from work two or more days per month would preclude work, according to the expert. Tr. at 86.

In *Vance v. Berryhill*, 860 F.3d 1114 (8th Cir. 2017), Vance argued that the ALJ failed to point to specific evidence to support its step-three conclusion that she did not meet any of the requirements of Listing 11.00. *Vance* at 1117. The Court wrote:

> Generally, "an ALJ's failure to adequately explain his factual findings is 'not a sufficient reason for setting aside an administrative finding.'" *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) (quoting *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999)). Remand is warranted "where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision." *Id.* … "We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne*, 198 F.3d at 1067.

13

In *Papesh v. Colvin*, 786 F.3d at 1133, the Court, quoting *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010), wrote: "[T]he opinions of non-examining medical sources are generally given less weight than those of examining sources." The Court noted that the ALJ was free to reject the conclusion of any medical expert if such is inconsistent with the record as a whole. *Papesh* at 1134.

In the case at bar, it is the opinion of the Court that because neither of the State agency consultants are treating sources, nor did either psychologist meet with Plaintiff for an evaluation, the ALJ's assessment of their opinions is such that the Court finds no error which would require reversal. The Court knows of no authority which would require the ALJ to make a detailed discussion of the weight afforded to the state agency consultants. Furthermore, as the Commissioner argues, even if the ALJ had given more weight to the opinion that Plaintiff had a moderate limitation is concentration, persistence or pace, it must be remembered that a finding of not disabled was made when that limitation was considered – both of the psychologists opined that Plaintiff retained the ability to perform limited detailed tasks and was only moderately limited in the ability to perform complex and technical tasks. Finally, the Court is of the opinion that even if the ALJ should have discussed the moderate limitation on Plaintiff's concentration, persistence or pace, the error is best described as a defect in opinion writing which does not require reversal because it would have no practical effect on the outcome of the case because the ALJ found Plaintiff could perform only unskilled work. Thus, the Court finds no error on this point.

## CONCLUSION AND DECISION

The Court has considered the evidence that supports, as well as the evidence that detracts, from the decision made by the ALJ. After applying the balancing test noted in *Gavin*, 811 F.2d at

1199, and cases cited therein, this Court holds that the final decision of the Commissioner is not supported by substantial evidence on the record as a whole. Plaintiff's motion for summary judgment is granted in part and denied in part. The Commissioner's motion for summary judgment is denied. **The case is reversed and remanded for reevaluation of the treating physician's opinion and for a new decision. The Clerk of Court will enter judgment accordingly.**

IT IS SO ORDERED.

Dated this ___26th___ day of August 2020.

_____
ROBERT W. PRATT, Judge
U.S. DISTRICT COURT